PAUL G. DE MURO, HYMEN SIEGENDORF, AND DAVID B. KAPLAN, MEMBERS OF THE BOARD OF COMMISSIONERS OF THE CITY OF PASSAIC, A MUNICIPAL CORPORATION, PLAINTIFFS-APPELLANTS, v. JOHN JAY SULLIVAN, A MEMBER OF THE BOARD OF COMMISSIONERS OF THE CITY OF PASSAIC, AND MARTIN KLUGHAUPT, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 1, 1960—Decided November 28, 1960.

Before Judges GAULKIN, SULLIVAN and FOLEY.

*Mr. William N. Gurtman* argued the cause for the appellants.

*Mr. Archibald Kreiger* argued the cause for the respondents.

The opinion of the court was delivered by

GAULKIN, J. A. D.  In this action for declaratory judgment plaintiffs claimed that the power to appoint a city counsel resides in the Board of Commissioners of Passaic (a second-class city operating under the commission (Walsh

Act) form of government), and not in defendant Sullivan as Director of Revenue and Finance. The office of city counsel had been assigned to the Department of Revenue and Finance at the board's organization meeting held May 19, 1959. The term of the incumbent city counsel (appointed by a predecessor Director of Revenue and Finance) having expired June 30, 1960, Sullivan appointed defendant Klughaupt to succeed him, effective July 1. The trial court granted summary judgment in favor of defendants, holding that the power of appointment was vested in defendant Sullivan as such Director, and that his appointment of defendant Klughaupt was valid. Plaintiffs appeal.

We note that plaintiffs sue only as "members of the Board of Commissioners of the City of Passaic, residing in the City of Passaic." They do not sue as taxpayers, and Passaic has not been made a party to the action as plaintiff or defendant. However, in their brief defendants do not question plaintiffs' right to sue, or the non-joinder of Passaic, and we mention these facts only to indicate that we express no opinion upon the plaintiffs' right to sue or upon the sufficiency of the parties. We pass these questions and proceed to the merits, chiefly because it is agreed that "the present suit was filed by the other four commissioners [one has since dropped out] pursuant to a resolution which they had adopted on June 7, 1960 over the negative vote of defendant, Sullivan." *Cf. Royal Indemnity Co. v. Hartford Acc. and Indem. Co.*, 58 *N. J. Super.* 75, 78 (*App. Div.* 1959).

Plaintiffs admit that before *Kagan v. Caroselli*, 30 *N. J.* 371 (1959) and *Tumulty v. Jersey City*, 57 *N. J. Super.* 503 (*App. Div.* 1959), it appeared to be well settled that in commission government communities "the power to appoint resides solely in the director of the department to which the particular position has been assigned * * * and a resolution of the board of commissioners as a body does not satisfy this requirement * * * except where the appointment is made by the governing body as a board at its organization meeting * * *," *Daly v. City of New Brunswick*, 3 *N. J.*

397 (1950), and that this applied to city counsel, city attorneys and law departments. *Murphy v. Board of Commissioners of Newark,* 119 *N. J. L.* 537 *(Sup. Ct.* 1938), affirmed opinion below, 121 *N. J. L.* 75 *(E. & A.* 1938); *O'Connell v. Board of Commissioners of Bayonne,* 116 *N. J. L.* 61 *(Sup. Ct.* 1935); *McGlynn v. Grosso,* 114 *N. J. L.* 540 *(Sup. Ct.* 1935). However, plaintiffs argue that the *Kagan* and *Tumulty* cases indicate that the old rule no longer applies, and never properly applied, to those "offices whose nature did not require that they must be assigned to a single department and whose functions and jurisdiction was appropriate to the jurisdiction of the whole board"; that the office of city counsel is such an office for, "like &ast; &ast; &ast; the magistrate in the *Kagan* case, it is not appropriate to any single department; and properly appropriate and relevant to the board, as the governing body. &ast; &ast; &ast; Considering the nature of the office of municipal law officer &ast; &ast; &ast; its jurisdiction and functions &ast; &ast; &ast; an appointment to it should be lodged in the board &ast; &ast; &ast; which, as the *Kagan* opinion states 'is more logically the recipient of the responsibility than would be a single commissioner' ".

■ The trial court answered these contentions in its oral opinion as follows:

"It seems to me that counsel overlooks the very heart of the *Kagan v. Caroselli* case. What the court had before it there was a question of the interpretation of the provisions of the municipal magistrate act, which provided for the appointment of a municipal magistrate by the governing body of the municipality. And the question was: What was the legislative intent in using the term governing body in the municipal magistrate act?

Distinguishing the earlier Walsh Act cases, the court very carefully pointed out that a magistrate, and I quote from page 377: 'A magistrate does not exercise the "judicial" power, authority, or duty of a municipality. On the contrary, his court is an integral part of a state-wide judicial system, and the judicial power he exercises is the judicial power of the State.'

And, therefore, the court held that the provisions of the Walsh Act which require distribution of the various municipal powers among the five departments do not apply to this power which is not a municipal power.

And the same thing is true as far as the *Tumulty* case is concerned, because what was involved in the *Tumulty* case again was not a municipal power but the power of an independent authority, the Housing Authority, provided for by *N. J. S. A.* 55:14A-1, *et seq.*

That is the very heart, as I see it, of the distinction to be made. Where the power being exercised is a power of the municipality, where the power to be exercised, as in this case, is the power to appoint a municipal official who exercises municipal powers, there is no doubt that the Walsh Act requires that power to appoint be distributed among the several departments.

The settled law of the last forty years has not been affected as far as municipal officers are concerned by the decisions in the *Kagan* and *Tumulty* cases."

We are in substantial agreement with this statement, and would add only the observation that the *Kagan* and *Tumulty* cases are not new in principle. In *Laidlaw v. West Orange*, 122 *N. J. L.* 133 (*Sup. Ct.* 1939), the court had before it certain acts "restated in [*R. S.*] 1937, *Revision*, 44:8-1 *et seq.*" relating to relief for the needy, which provided in part (122 *N. J. L.*, at *p.* 135) that "There shall be appointed in each municipality a local assistance board * * * to be appointed by the chief executive officer of the municipality, upon approval of the governing body * * * The local assistance board shall * * * appoint a director of welfare. * * * Such local assistance board shall administer public assistance within the municipality for which it is created * * *."

Commenting upon this legislation, the court said (122 *N. J. L.*, at *p.* 135):

"The general framework of the * * * legislation * * * is not such as to suggest that the Legislature, in passing it, had the peculiar machinery of commission governed municipalities in mind, but it does carry conviction that the Legislature intended the statute to be mandatory upon every municipality regardless of the form of its government. And we are of the opinion that the Legislature did not intend that the functioning of the local assistance board should be placed under the direction of any single member of the governing body. * * *"

Then, after analyzing various sections of the statute, the court said (122 *N. J. L.,* at *p.* 135) :

"We conclude, therefore, that it is not mandatory, and probably not lawful, for the local assistance board to be allocated to the Department of Public Affairs."

Nevertheless, the court adjudged that a resolution which (122 *N. J. L.,* at *p.* 134) provided that "supervision and direction of the Department of Public Welfare and of the office of Overseer of the Poor be transferred from the Department of Public Affairs to the Mayor and the Board of Commissioners as a whole," was void. The court held that the "Department of Public Welfare" in the resolution was apparently something different from the "local assistance board" in the statute, and the "Overseer of the Poor" in the resolution something other than "director of welfare" under the statute. Hence, said the court, the "Overseer of the Poor" and the "Department of Public Welfare" must still be assigned to a single commissioner, even though a local assistance board and a director of public welfare to be appointed under the cited statute could not be. The court held (122 *N. J. L.,* at *pp.* 134, 136) :

"The principle that the duties of the commissioners are to be assigned to appropriate departments and not retained to and assumed by the board as a whole is too thoroughly established to require discussion. The resolution in dispute, upon its face, offends that principle. \* \* \*
\* \* \* *We think that the general principle of allocating the functions of municipal government to one or another of the five departments is too thoroughly established by statute and by decision to permit a divergence except under legislative provision.* We find no indication that the legislature intended to diverge from that policy of municipal government beyond what is necessary to the operation of the cited legislation. \* \* \* The resolution is set aside as void for the reason that it purports to allocate to the Board of Commissioners as a whole that which, under the law, should be assigned to a commissioner." (Emphasis added)

In short, there may be statutes which by their terms are to be carried out by the board as a whole, and mean that

the duties thereunder shall not be delegated to a single commissioner. Such were the statutes in *Kagan, Tumulty* and *Laidlaw*. The statute under which a city counsel is appointed in Passaic (*R. S.* 40:171–109) is not such a statute.

■ Appellants make the further argument that the board may nevertheless reserve or recapture the right to make the appointment, and that the board did so in the case at bar by the adoption of the following resolution at the time when the office of city counsel was assigned to the Department of Revenue and Finance:

"WHEREAS, it is the desire and intention of the members of this Board that they adopt the policy of functioning as a joint body by majority vote in the making of all appointments and in the formulation of all policies.

RESOLVED by the members of the Board of Commissioners of the City of Passaic that it shall be the policy of this Board that all appointments to public office and positions and the formulation of all policies for the administration of City affairs shall be submitted to this Board and acted upon by a majority vote of the Board;

FURTHER RESOLVED, that notice of any proposed appointment shall be submitted to the Board in writing not later than the meeting prior to the meeting when the appointment is called up for approval;

FURTHER RESOLVED, that it is the intent and purpose of the members of this Board, in adopting this resolution, to be bound thereby by voluntary consent thereto as a moral obligation."

As to this resolution, the trial judge said:

"In my view, the resolution by its very terms purports to create a moral obligation. Implicit in the language of the resolution itself is a recognition, it seems to me, of the fact that under the settled law it would not be possible to reserve to all the members of the Board the control of the appointments of individual officers once the assignments to the Departments have been made. And that, to me, is the only logical explanation of the language, and I quote: 'that it is the intent and purpose of the members of the Board, in adopting this resolution, to be bound thereby by voluntary consent thereto as a moral obligation.'

If it were to create a legal obligation that language, it seems to me, would be completely unnecessary.

But, in any event, if it was intended to reserve to the whole Board the power to control that which the statute requires to be

distributed among the members, then such reservation of power would be invalid. *Murphy v. Board of Commissioners of Newark,* reported in 119 *N. J. L.* 537, affirmed on opinion below in 121 *N. J. L.* 75; *McGlynn v. Grosso,* 114 *N. J. L.* 540; *Laidlaw v. West Orange* in 122 *N. J. L.* 133; see also *Daly v. [City of] New Brunswick,* 3 *N. J.* [397] 398."

We agree. See also *O'Connell v. Bayonne, supra,* 116 *N. J. L.,* at *p.* 63, where the court said: "the board of commissioners, in assuming to take the law department back unto itself and, as a body, to appoint prosecutor to the office of corporation counsel, had not the lawful authority to do so."

We agree also with the trial court's observation:

"* * * the very fact that the legislature, with knowledge of these judicial interpretations, has over the years amended the Walsh Act in various respects but has not attempted to change those rules, constitutes a legislative recognition, at least, that those judicial interpretations are in accordance with the legislative intent. See *Miller v. Board of Chosen Freeholders,* reported in 10 *N. J.* 398 (1952); *Mechanics Finance Co. v. Austin,* 8 *N. J.* 577; *Lane v. Holderman,* 40 *N. J. Super.* 329; *Shelton College v. Borough of Ringwood,* 48 *N. J. Super.* 10; *Barringer v. Miele,* 6 *N. J.* 139; *Harper v. N. J. Manufacturers Casualty Insurance Co.,* 1 *N. J.* 93 (1948); and finally perhaps the most recent case, *Eagle Truck Transportation v. Board of Review,* 29 *N. J.* 280 (1959). It is, of course, true that the failure of the legislature to amend is not conclusive, but I think it is an important factor to be considered."

For the foregoing reasons, the judgment is affirmed.